RADEL v. LESHER et al.

(Circuit Court of Appeals, First Circuit. April 28, 1905.)

No. 567.

1 TRIAL—QUESTIONS FOR JURY—CONFLICT OF EVIDENCE.

Where the decisive question at issue in an action was whether the construction of an electric railroad by plaintiffs for defendant was under an express contract, or under general authority given by defendant, which virtually made plaintiffs his agents in the doing of the work, and the testimony as to the conversation between the parties by which the arrangement was made was in direct conflict, such issue was properly submitted to the jury.

2. SAME—RECEPTION OF EVIDENCE.

A situation is oftentimes presented on a trial where evidence is material and competent upon one theory of the case, while it would be neither material nor competent upon the theory on which the adverse party is proceeding, and in such case, when the correct theory depends upon questions of fact it is not error to admit such evidence to be considered by the jury under proper instructions.

3. SAME—MEASURE OF DAMAGES.

In an action to recover for the building of a line of electric railroad, which plaintiffs alleged was done under a general authority from defendant, which in effect made them his agents in doing the work, the right of recovery on such theory was not upon a quantum meruit, and it was not error to admit evidence on behalf of plaintiffs showing the amount actually expended by them for labor and materials.

In Error to the Circuit Court of the United States for the District of Rhode Island.

The following is the opinion of the Circuit Court on defendant s petition for a new trial, by BROWN, District Judge:

At two trials of this case to different juries, there was submitted for a special finding the following question: "Did an express contract at a fixed price exist between the plaintiffs and defendant for the construction of the road from Wickford to East Greenwich?" Two juries have answered "No" to this question. At each trial I was of the opinion that this was a question for the jury, and that the defendant's motion that a verdict be directed for the defendant should be denied. At the last trial there was much conflict of testimony on this issue, and I am of the opinion that it cannot be said, as a matter of law, that the evidence so conclusively established the defense of an express contract as to require the direction of a verdict on that ground. Exception was duly taken to the denial of the motion to direct a verdict, and, if I am in error on this point, the appellate court can give relief. See Kelley v. Cunard, SS. Co. (C. C.) 120 Fed. 536, 542; Cunard SS. Co. v. Kelley, 126 Fed. 610, 611, 61 C. C. A. 532.

It is contended also that the damages are excessive. At the first trial the verdict was for $14,198.56, with interest from December 5, 1900. At the second trial the verdict was for $12,773.74, and interest figured at $2,725.01. I have no reason to believe otherwise than that the jury endeavored to deal fairly with this question.

The plaintiffs offered evidence as to the number of teams and laborers employed upon the work, the amounts expended upon pay rolls, etc., as to the materials furnished, and as to usual prices for what was furnished, as to money expended, etc. In my opinion, this was competent evidence. The defendant called expert witnesses, who, in answer to hypothetical questions based upon estimates or measurements of the excavation and trackwork, etc., actually accomplished, gave their opinion as to a proper price for the completed work. Each of these modes of figuring a fair compensation is liable to error. There is the possibility that more laborers and teams were paid for than were necessary; that there was wasted labor. Evidence on this point was offered on both sides. There is also the possibility that the estimates upon which the experts based their figures omitted some matters for which charges could be made properly. Theoretically, perhaps, the same result should have been reached, whichever mode of computation was employed. Actually there was a wide discrepancy. The jury's verdict apparently was the result of a compromise between the views of opposing witnesses. Two apparently fair-minded and ordinarily intelligent juries have reached substantially the same result. The plaintiff's evidence on this point is much stronger than at the previous trial, and I am of the opinion that the verdict should not be disturbed on the ground that the damages are excessive.

I am of the opinion that the affidavits are insufficient to warrant the granting of a new trial for newly discovered evidence.

Petition for a new trial denied.

Walter F. Angell (T. F. I. McDonnell and Arthur M. Allen, on brief), for the plaintiff in error.

Milton Reed and Amasa M. Eaton (Frank S. Arnold, on brief), for defendants in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. In 1899 there was a written contract between Radel and the Leshers whereby the Leshers were to build an electric railroad between Narragansett Pier and Wickford, in the state of Rhode Island, for which Radel was to pay a contract price for track laid, wires run, and material excavated, etc. There is nothing in controversy, however, about the contract for the first

year, or the operations thereunder, and it is only material as having some relation to the claims of the parties as to the second year's operations.

Under some arrangement between the parties—an arrangement to which the present controversy relates—the Leshers in 1900 had to do with building an extension of the road from Wickford to East Greenwich, and with completing some part of the road between Narragansett Pier and Wickford. The position of Radel was that the operations of 1900 were under a special contract, which resulted from a parol agreement between himself and the Leshers; that the operations of 1900 were to be upon the terms and conditions expressed in the written contract of the year before. In other words, that by parol agreement the written contract of 1899 was extended over the operations of 1900, while, on the other hand, the Leshers claim that there was no contract engagement; that the interview at Bridgeport had reference only to the question of his taking up the work for Mr. Radel, and as to the probable expense of building the road, in view of the advance in prices for labor and material; and that there was no engagement or suggestion, even, that he was to proceed under a contract.

The questions raised for our consideration depend largely, if not altogether, upon the relations of the parties. If the work was to be carried on under a special contract, as Radel contends, the point against recovering under the common counts would quite likely be well taken. If, on the other hand, the relation was that of principal and agent, with the broadest possible authority to the agent—authority coextensive with the necessities usual in carrying forward an exterprise wholly committed to an agent's hands—then unquestionably the common counts would be a proper remedy for recovering what the agent's services were reasonably worth, and, in the absence of fraud, for money paid for material and labor in prosecuting the contemplated enterprise in the usual manner. This would be upon the ground that a prosecution of the work in the usual way was within the scope of the authority conferred.

Upon this pivotal question of what the relations actually were there is a very serious dispute, and one which cannot possibly be settled as matter of law. If the parties were in accord as to the talk at Bridgeport about taking up the second year's operations, then it might be a question of law as to the effect of the conversation and as to the obligations under the contract; but that we need not decide, because the relations depend upon what the conversation was, and the parties are seriously and substantially in dispute as to its tenor and effect, one party testifying to a conversation which tends to establish a contract to go forward upon the terms of the year before; and the other party, denying this, testifies to a request to go on and build the road, and to a conversation tending to show relations inconsistent with contractual relations. Thus an issue of fact is raised, and upon the trial there was positive and substantial testimony upon both sides of the issue as well as probabilities and circumstances which had substantial bearing one way and the other upon the disputed question.

137 F.—46

There being substantial evidence on both sides, the issue was one which necessarily had to be submitted to the jury under instructions as to what the obligations would be in case the jury should find the facts to be the one way or the other. The disputed question was submitted to the jury under general instructions upon the subject, and, there being no specific objection to the instructions, we need not inquire whether they were sufficiently comprehensive, or in detail technically correct. The only point taken was that there was no evidence to warrant submitting the question to the jury, and none to warrant a verdict for the plaintiffs, and upon this we must find and hold against such contention.

A situation is oftentimes presented where evidence is material and competent upon one theory of the case, while it would be neither material nor competent upon the theory upon which the adversary is proceeding. That is true of this case, and, in the hypothetical situation which confronted the learned judge below, he could only act upon the theory that, if the jury should find that the work was being done under a special contract, then the evidence as to the reasonableness of the claim for services, and that the expenditures were such as were usual and necessary, would become wholly immaterial, while, on the other hand, if the jury should believe the other view, then it would have a material and competent bearing upon the question as to what the plaintiffs' services were reasonably worth, what he had paid out in the defendant's behalf, and what he was entitled to recover.

The assignments of error directed against rulings which admitted certain evidence as to expenditures are grounded upon the theory that such evidence was not competent under the quantum meruit count for building the road, because, as contended, under such circumstances it would not be the cost of the labor and materials which have gone into the work, but what the completed structure is fairly and reasonably worth. In the view we take of this case, we need not consider whether this would be so or not, and this is for the reason, as appears from the record, that the jury, under instructions which submitted the issue of fact between the parties, decided the case upon a different theory of the relations than that contended for by the defendant, namely, that, under the relations which they found to exist, the recovery should be for work, labor, and materials furnished under authority and direction from Radel to build the railroad. The fact of such relation being found, we see no objection to the evidence as legitimately tending to establish what the plaintiffs were entitled to recover under that view of the case.

The judgment of the Circuit Court is affirmed with interest, and the defendants in error recover costs in this court.